[997 NYS2d 492]

In the Matter of RONALD T. LEVINSON (Admitted as RONALD TERRY LEVINSON), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 31, 2014

## APPEARANCES OF COUNSEL

*Mitchell T. Borkowsky,* Hauppauge (*Robert H. Cabble* of counsel), for petitioner.

*Scalise & Hamilton,* Scarsdale (*Catherine A. Sheridan* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a petition dated December 13, 2012, containing 11 charges of professional misconduct. The respondent served an answer pro se. A notice of appearance dated September 9, 2013 was filed by counsel for the respondent. In October 2013, counsel for the parties entered into a stipulation amending certain factual specifications within the petition and the answer, and consenting to the admission of documents into evidence. After a preliminary hearing on June 24, 2013, and a hearing on October 15, 2013, the Special Referee issued a report, which sustained all charges except charge 9. The petitioner now moves to confirm in part, and disaffirm in part, the report of the Special Referee, and to impose such discipline upon the respondent as the Court deems just and proper. The respondent cross-moves to confirm in part, and disaffirm in part, the report of the Special Referee, and asserts that, having practiced for 10 years subsequent to the events underlying this matter without further incident, having acknowledged and apologized for his mistakes, and having produced character evidence of his reputation for integrity and honesty, he is neither a threat to the public nor unfit to practice law. In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained charges 1, 2, 4, 5, 6, and 8, and those charges are sustained. Additionally, we find that the Special Referee properly declined to sustain charge 9, and that charge is not sustained. However,

we find that the Special Referee improperly sustained charges 3, 7, 10, and 11, as the evidence did not support the findings of the Special Referee, and those charges also are not sustained.

All charges emanate from a common set of facts. Based upon the respondent's admissions, his sworn testimony, and the evidence adduced, those facts are as follows:

In early 2004, James Lytell, the resident owner of real property known as Dock Lane, located in Kings Point/Great Neck, sought the respondent's assistance concerning his mortgage delinquency. The respondent previously represented Lytell in multiple civil matters from in and around the years 2000 through 2004. Lytell wanted to remain at Dock Lane but, in light of his financial difficulties, he agreed to sell the property, conditioned upon his retention of a life estate. The respondent's family friend and legal client, James Hartmann, and Hartmann's mother, Louise LoRusso (hereinafter together Hartmann and LoRusso, or the purchasers), agreed to purchase Dock Lane, and to grant Lytell a life estate. The respondent simultaneously represented Lytell, Hartmann, and LoRusso in the Dock Lane transaction. The respondent, through his brokerage, Birch Hill Realty (hereinafter Birch Hill), also served as the broker in the Dock Lane sale.

Lytell, Hartmann, and LoRusso executed a contract of sale dated April 21, 2004, which did not close. A second contract of sale dated May 11, 2004 (hereinafter the contract) was executed by Lytell, Hartmann, and LoRusso, which provided for a $912,500 purchase price, with a down payment of $182,500, and the balance of $730,000 due at closing. Notably, the contract made no reference to Lytell's life estate. As the designated escrow agent, the respondent received a check from LoRusso representing the required down payment. However, the respondent never negotiated LoRusso's check, and the purchasers never paid the down payment.

The closing occurred on May 17, 2004. The respondent represented the interests of Lytell, and assigned an associate in his firm, Daniel P. Marcote, to represent the interests of Hartmann and LoRusso at the closing. The respondent admits that, at all times, he directed and controlled the activities of Marcote in the Dock Lane transaction. The respondent also represented the interests of Birch Hill at the closing. At the closing, Lytell, Hartmann, and LoRusso each executed a waiver, acknowledging their consent to the respondent's firm's simultaneous representation of the seller and purchasers. However,

the respondent did not, prior to his clients' execution of the waivers, fully or adequately disclose to each client the differing interest each of them had with regard to the others, and he did not adequately disclose the differing interests between his role as attorney for the parties to the transaction and his role as the real estate broker.

As the seller, Lytell executed a bargain and sale deed (hereinafter the deed) in favor of Hartmann and LoRusso, which was later recorded in the Nassau County Clerk's Office. The deed did not reference a life estate in favor of Lytell. Instead, the respondent prepared a life estate agreement, and a quitclaim deed, each purporting to convey a life estate in the Dock Lane premises to Lytell. Both documents were executed by Hartmann and LoRusso at the closing. The respondent also prepared a New York residential lease (hereinafter the lease), purporting to convey a leasehold interest in the Dock Lane premises to Lytell, which was executed by Hartmann, but not LoRusso. The life estate agreement, the quitclaim deed, and the lease were not recorded in the Nassau County Clerk's Office.

Concerning the financial aspects of the closing, the purchasers obtained a $730,000 mortgage loan from Countrywide Home Loans, Inc. (hereinafter the lender). The HUD-1 Settlement Statement (hereinafter the HUD-1), prepared by the attorney for the lender, and signed by the respondent's clients, falsely indicates that a contract deposit of $182,500 was paid by the purchasers. Pursuant to the HUD-1, after an adjustment for taxes, the gross amount due Lytell was $916,887.37. However, inasmuch as the contract down payment was never received, the only funds used to complete this sale were derived from the proceeds of the $730,000 mortgage loan. After deductions for closing costs, and other disbursements (including $88,207.86 to satisfy Lytell's mortgage, and $20,000 paid as a broker's commission to Birch Hill), the net proceeds to Lytell totaled $591,441.23.

Additionally, at the closing, Lytell gave Hartmann a private loan in the amount of $350,631.42. The respondent represented both Lytell and Hartmann in connection with the private loan transaction, without providing full disclosure of the potential conflict of interest to each of his clients. The respondent prepared, and Hartmann executed, a promissory note secured by a mortgage on the Dock Lane premises. The promissory note reflects an interest rate of 6% per annum, and monthly pay-

ments to Lytell in the amount of $1,753.16 for a 30-year period. The mortgage was never recorded by the respondent.

After the closing, Hartmann and LoRusso received a closing statement (hereinafter the closing statement) from the respondent's firm, which falsely indicated that Hartmann and LoRusso made a down payment of $182,500. The closing statement did not reflect the private loan from Lytell to Hartmann. The respondent did not provide Lytell with a closing statement.

Two months later, LoRusso conveyed her interest in Dock Lane to Hartmann by quitclaim deed (hereinafter the LoRusso quitclaim deed) dated July 8, 2004. The respondent prepared the LoRusso quitclaim deed in connection with an equity line of credit for Hartmann. Again, it did not contain any reference to Lytell's life estate. On or about November 17, 2004, Hartmann obtained a home equity line of credit in the amount of $300,000. The respondent represented the lender in this transaction.

In or about April 2007, a foreclosure action was commenced in the Supreme Court, Nassau County. The pleadings in the foreclosure action alleged that Hartmann executed a promissory note in or about June 2006 for the sum of $2,480,000, secured by a mortgage on the Dock Lane premises, and that he was in default on the payments. Lytell contacted the respondent after learning of the foreclosure action, seeking his representation, but was advised that the respondent could not represent him due to a conflict of interest.

In 2007, Lytell commenced an action against the respondent, LoRusso, and Hartmann alleging malpractice and fraud. The action was settled before trial in or about March 2011, resulting in a monetary settlement in favor of Lytell.

Charge 1 alleges that the respondent is guilty of engaging in conduct that adversely reflects on his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 2 alleges that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge 4 alleges that the respondent is guilty of engaging in a conflict of interest by simultaneously representing the seller and the purchasers in a real estate transaction, whose interests

differed, in violation of former Code of Professional Responsibility DR 5-105 (a) and (b) (22 NYCRR 1200.24 [a], [b]).

Charge 5 alleges that the respondent is guilty of engaging in a conflict of interest by simultaneously representing the lender and the borrower in a real estate transaction, whose interests differed, in violation of former Code of Professional Responsibility DR 5-105 (a) and (b) (22 NYCRR 1200.24 [a], [b]).

Charge 6 alleges that the respondent is guilty of engaging in a conflict of interest by acting as a real estate broker in a real estate transaction in which he also represented the seller and the purchasers as attorney, in violation of former Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]).

Charge 8 alleges that the respondent is guilty of failing to act competently, by handling a legal matter which he knew or should have known that he was not competent to handle, without associating with a lawyer who was competent to handle it; and/or handling a legal matter without preparation adequate in the circumstances, in violation of former Code of Professional Responsibility DR 6-101 (a) (1) and (2) (22 NYCRR 1200.30 [a] [1], [2]).

In view of the respondent's admissions and the evidence adduced at the hearing, we conclude that the respondent engaged in multiple conflicts of interests by his simultaneous representation of the seller, the purchasers, and the realty brokerage; he knowingly prepared a contract which materially misrepresented the terms of the sale (omitting the true sales price and the life estate), without due disclosure to the lender, for the purpose of obtaining a mortgage loan to complete the sale; and failed to act competently in his representation of Lytell, as evidenced by his failure to secure a valid life estate and to record the mortgage given as security in the private loan. Accordingly, the petitioner's motion to confirm in part and disaffirm in part, the report of the Special Referee, is granted to the extent that charges 1, 2, 4, 5, 6, and 8 are sustained, and denied to the extent that charges 3, 7, 9, 10, and 11 are not sustained. The respondent's cross-motion to confirm in part and disaffirm in part, the report of the Special Referee, is granted to the extent that charges 3, 7, 9, 10, and 11 are not sustained, and denied to the extent that charges 1, 2, 4, 5, 6, and 8 are sustained.

In determining an appropriate measure of discipline to impose, we note that this matter arises from an unusual trans-

action, which occurred 10 years ago. Under the totality of the circumstances, including the respondent's inexperience at the time of the events; his recognition of, and remorse for, his mistakes; his payment for those mistakes through a malpractice action; his character evidence; his devotion to assisting the public through pro bono services; the absence of a prior disciplinary history; and the fact that, in the intervening 10 years, he has not been the subject of any disciplinary investigations, we find that the respondent's conduct warrants his suspension from the practice of law for a period of six months.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that charges 1, 2, 4, 5, 6, and 8 are sustained, and denied to the extent that charges 3, 7, 9, 10, and 11 are not sustained; and it is further,

Ordered that the respondent's cross-motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that charges 3, 7, 9, 10, and 11 are not sustained, and denied to the extent that charges 1, 2, 4, 5, 6, and 8 are sustained; and it is further,

Ordered that the respondent, Ronald T. Levinson, admitted as Ronald Terry Levinson, is suspended from the practice of law for a period of six months, commencing January 30, 2015, with leave to apply for reinstatement upon the expiration of said period, upon furnishing satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements (*see* 22 NYCRR 691.11 [c] [2]), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, and until the further order of this Court, the respondent, Ronald T. Levinson, admitted as Ronald Terry Levinson, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding

himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Ronald T. Levinson, admitted as Ronald Terry Levinson, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).